IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| GREGORY S. MILLIGAN, *Chapter 7 Trustee for Westech Capital Corporation and on behalf of Tejas Securities Group, Inc.*, | § § § § | |
| Plaintiff/Appellant, | § § | |
| v. | § § | 1:18-CV-327-RP |
| GREG SALAMONE; GREENBERG TRAURIG, LLP; and ROBERT W. HALDER; | § § § § | |
| Defendant/Appellee. | § § | |

## ORDER

Before the Court is Appellant Gregory S. Milligan's ("Milligan") appeal of the bankruptcy court's order dismissing with prejudice his claims against Appellee Greenberg Traurig, LLP ("Greenberg"). (Dkt. 12). Having considered the parties' briefs, the record, and the relevant law, the Court finds that the Bankruptcy Court's order should be affirmed in part and vacated in part.

## I. BACKGROUND

Milligan is the Chapter 7 Trustee of Westech Capital Corp. ("Westech"), a financial services holding company incorporated in Delaware. (3d Am. Compl., Dkt. 12-3, at 6). Westech owns a subsidiary called Tejas Securities Group, Inc. ("Tejas"), through which it provides securities analysis. (*Id.*). This action began as a stockholder derivative action in the Delaware Court of Chancery but was later transferred to the United States Bankruptcy Court for the Western District of Texas after Westech filed for bankruptcy. (*Id.* at 5). The claims at issue on appeal concern only Greenberg, which represented Westech before and during litigation for control of Westech's board. (*Id.* at 11–23).

1

Westech hired Robert W. Halder ("Halder") to be its president and chief operating officer in October 2011.[1] (*Id.* at 11). Greenberg drafted Halder's employment contract, which contained non-competition and -solicitation clauses and expired after three years. (*Id.* at 11–12).

In August 2013, Westech founder John J. Gorman IV ("Gorman") sued Halder and another board member, Mike Dura ("Dura"), to remove them from the board. (*Id.* at 13). Halder countersued on the same day, seeking to remain on the board. (*Id.*). The next month, the Delaware Court of Chancery issued a status quo order naming Halder, Dura, and Gary Salamone ("Salamone") as directors during the control litigation. (*Id.* at 14). The Court of Chancery then consolidated the two suits in October 2013 (the "First 225 Action"). (*Id.* at 13).[2]

The Court of Chancery tried the First 225 Action in January 2014 and issued a memorandum opinion on May 29, 2014. (*Id.* at 15–16). In its opinion, the Court of Chancery found that Halder had been removed from Westech's board. (*Id.* at 16). On the same day, Greenberg drafted an agreement that would cancel Halder's employment contract, release him from his non-competition and -solicitation obligations, and promise to pay Halder any accrued obligations (the "Cancellation Agreement"). (*Id.* at 17). Halder and Salamone (acting on behalf of Westech) signed the Cancellation Agreement the next day. (*Id.*). Halder remained on the board until the Court of Chancery entered a final judgment implementing its memorandum opinion on June 24, 2014, which vacated the status quo order. (*Id.* at 19). Halder formally resigned on July 2, 2014, (*id.*), and then went to work for a competitor, (*id.* at 21).

Westech now argues that Greenberg was conflicted when it represented Westech during the First 225 Action and when it drew up the Cancellation Agreement. (*Id.* at 18–19). Milligan, as Westech's bankruptcy trustee, asserts claims against Greenberg for (1) breach of fiduciary duty, (*id.*

---

[1] Halder also served as interim chief operating officer of Tejas.

[2] The Court, like Milligan, refers to the control litigation as a "225 action" because Gorman's action sought relief under 8 Del. Code § 225. (3d Am. Compl., Dkt. 12-3, at 13).

2

at 48); (2) aiding and abetting Halder and Salamone in their breaches of fiduciary duty, (*id.* at 51); and (3) malpractice and negligence, (*id.* at 56).

Greenberg moved to dismiss Milligan's claims against it under Federal Rule of Civil Procedure 12(b)(6). The Bankruptcy Court granted Greenberg's motion. (Order, Dkt. 12-3, at 105, 126). Milligan now appeals to this Court, arguing that the Bankruptcy Court granted Greenberg's motion in error. (Appellant Br., Dkt. 12, at 3).

## II. LEGAL STANDARD

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference,

3

and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). Because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Id.* "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)). The Court reviews the Bankruptcy Court's dismissal of Milligan's complaint pursuant to Rule 12(b)(6) *de novo*. *See Singh v. RadioShack Corp.*, 882 F.3d 137, 144 (5th Cir. 2018).

## III. DISCUSSION

### A. Choice of Law

All of Milligan's claims against Greenberg arise under state law, but the parties do not agree on which state's law applies. Instead, both parties analyze Milligan's claims under both Texas and Delaware law, as did the Bankruptcy Court. (Appellant Br., Dkt. 12; Appellee Br., Dkt. 14; Bankr. Ct. Order, Dkt. 12-3, at 104–26). Milligan argues that choice of law issues should not be resolved at the motion-to-dismiss stage. (Appellant Br., Dkt. 12, at 20 n.64). That position is incorrect. In the Fifth Circuit, "[c]hoice-of-law decisions can be resolved at the motion to dismiss stage when factual development is not necessary to resolve the inquiry." *Energy Coal v. CITGO Petroleum Corp.*, 836 F.3d 457, 459 (5th Cir. 2016). Indeed, district courts regularly resolve choice-of-law questions in deciding motions to dismiss. *See, e.g.*, *Mandell v. TA Operating LLC*, EP-09-CV-260-DB, 2012 WL 13075595, at *3 (W.D. Tex. Aug. 21, 2012) (collecting cases); *Cypress/Spanish Ft. I, L.P. v. Prof'l Serv. Indus., Inc.*, 814 F. Supp. 2d 698, 707 (N.D. Tex. 2011) ("The issue of whether Texas or Alabama limitations applies is a pure question of law that is properly subject to Rule 12(b)(6)."). Neither party points to any factual development necessary to resolve this action's choice-of-law question. (*See* Appellant Br.,

4

Dkt. 12, at 20 n.64; Pl.'s Answering Brief, Dkt. 12-3, at 85). The Court will therefore decide which state's law applies to Milligan's claims before considering the adequacy of his pleadings.

The Bankruptcy Court has subject matter jurisdiction over Milligan's claims against Greenberg under 28 U.S.C. §§ 157(b), 1334(b), and 1367, because they are non-core claims related to Westech's bankruptcy action. (*See* Appellant Br., Dkt. 12, at 8). The Fifth Circuit has not decided whether state or federal choice-of-law rules apply when a court has jurisdiction under federal bankruptcy statutes. *See Fishback Nursery, Inc. v. PNC Bank, N.A.*, 3:16-CV-03267-B, 2017 WL 6497802, at *4 (N.D. Tex. Dec. 19, 2017) (citing *Woods-Tucker Leasing Corp. of Ga. v. Hutcheson-Ingram Dev. Co.*, 642 F.2d 744, 748 (5th Cir. 1981)); *In re Cyrus II P'ship*, 413 B.R. 609, 614 (Bankr. S.D. Tex. 2008) (same). Like other courts, *see Woods-Tucker*, 642 F.2d at 748, this Court need not resolve the question because both federal and Texas choice-of-law rules lead to the same result here, as both federal and Texas law look to the Restatement (Second) Conflict of Laws. *In re Mirant Corp.*, 675 F.3d 530, 536 (5th Cir. 2012).[3]

Under the Restatement's approach, courts are to consider "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of the other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied." *Id.* at 536 n.2. Additional factors specific to torts are also relevant here, including "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place

---

[3] Under federal law, a court must use its independent judgment to determine which state has the most significant contacts with the action. *In re Cyrus II P'ship*, 413 B.R. at 614 (citing *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 16 (1946)); *Woods-Tucker*, 642 F.2d at 748. Texas law provides that choice-of-law issues should be decided according to the Restatement's "most significant relationship" test. *Hughes Wood Products, Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000) (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 6, 145 (1971)). "[T]he independent judgment test 'is essentially synonymous with the most significant relationship approach adopted by' the Restatement (Second) Conflict of Laws.'" *In re Mirant Corp.*, 675 F.3d at 536 (citation omitted).

5

of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Id.*

The four tort-specific factors all weigh heavily in favor of applying Texas law. Westech is an Austin company. (*See* Voting Agreement, Dkt. 3-2, at 127). The Greenberg attorney representing Westech worked in Greenberg's Austin office. (3d Am. Compl., Dkt. 12-3, at 48). Halder maintained a residence in Austin during the period relevant to this action. (*See* Voting Agreement, Dkt. 3-2, at 192; 1st Am. Compl., Dkt. 3-2, at 74). Clearview Advisors, Inc., the competitor for which Halder left Westech, is an Austin company. (FINRA Report, Dkt. 3-2, at 334, 336, 338). Milligan alleges that Greenberg, through an Austin attorney, breached its fiduciary duty to an Austin company by helping an Austin employee leave Westech on terms favorable to him (and unfavorable to Westech), causing injuries including the employee taking business to an Austin competitor. (*See* 3d Am. Compl., Dkt. 12-3, at 9–25). The alleged injury and causal conduct occurred in Austin, one party is based in Austin, and the parties' relationship is centered in Austin because Greenberg represented Westech through an attorney in their Austin office.

The general factors also weigh in favor of applying Texas law. The only basis for applying Delaware law is that Westech is incorporated in Delaware. While Texas law provides that Delaware law therefore applies to the duties of Westech's officers,[4] the claims at issue here do not pertain to Westech's officers. Rather, they pertain to the duties owed Westech by its Austin-based counsel, its counsel's conduct, and its counsel's knowledge about the conduct of others. The parties would be justified to expect that Texas law would govern the conduct of a Texas attorney acting in Texas to represent a company headquartered in Texas. Accordingly, the Court finds that Texas law applies to Milligan's claims against Greenberg.

---

[4] Tex. Bus. Orgs. Code §§ 1.102, 1.105.

6

## B. Breach of Fiduciary Duty

Milligan alleges that Greenberg breached its fiduciary duty to Westech by (a) drafting and causing Westech to enter into the Cancellation Agreement, and (b) failing to recommend that Westech enforce Halder's non-competition and -solicitation agreements. (3d Am. Compl., Dkt. 12-3, at 48–50). The Court agrees with the Bankruptcy Court that Milligan has failed to state a claim for breach of fiduciary duty against Greenberg.

Attorneys owe their clients fiduciary duties under Texas law. *Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 428–29 (Tex. App.—Austin 2009, no pet.). To prevail on a breach-of-fiduciary-duty claim, a plaintiff must prove "(1) the existence of the fiduciary relationship; (2) a breach of that duty by the attorney defendant; (3) that causes; and (4) damages . . . the plaintiff." *Id.* at 429.

But Texas courts examine whether allegations "labeled as breach of fiduciary duty . . . are actually claims for professional negligence or something else." *Duerr v. Brown*, 262 S.W.3d 63, 70 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *see also Beck*, 284 S.W.3d at 429 ("Not every complaint that can be said to implicate a lawyer's fiduciary duties is actionable separately from a negligence claim."). To distinguish between the two types of claims, Texas courts focus on the following distinction: breach-of-fiduciary-duty claims focus on "whether an attorney obtained an improper benefit from representing the client," while negligence claims focus on "whether an attorney represented a client with the requisite level of skill." *Id.* (quoting *Murphy v. Gruber*, 241 S.W.3d 689, 696 (Tex. App.—Dallas 2007, pet. denied)). Put differently, "if the gist of the plaintiff's complaint is that the lawyer failed to advise, inform, or communicate with a client, it is a negligence claim." *Id.* (citing *Murphy*, 241 S.W.3d at 698). "If, on the other hand, the gist of the complaint is that the lawyer obtained an improper benefit by not disclosing the asserted 'conflict,' it is an independent breach-of-fiduciary-duty claim." *Id.* (citing *Murphy*, 241 S.W.3d at 693).

Milligan alleges that Greenberg breached its fiduciary duty to Westech because it was conflicted when it "concurrently advocated (i) on behalf of Halder for his claim against Westech for accrued compensation and (ii) on behalf of Westech in drafting and negotiating the Cancellation Agreement." (Appellant Br., Dkt. 12, at 23; *see also* 3d Am. Compl., Dkt. 12-3, at 50).[5] According to Milligan, executing the Cancellation Agreement was in Halder's interest but not Westech's because (a) Halder was paid substantially more money under the Cancellation Agreement than he would have been paid had Westech simply not renewed his employment contract, and (2) he was released from his non-competition and -solicitation obligations, which allowed him to immediately undermine Westech's business. (3d Am. Compl., Dkt. 12-3, at 28–32).

Greenberg responds that no conflict existed because Westech's management group during the First 225 Action (Halder, Salamone, and Dura) was fully aligned with Westech, which could only act through that group. (Appellee Br., Dkt. 14, at 17). The Bankruptcy Court reached essentially the same conclusion, finding that Milligan "does not identify the conflict" present in Greenberg's work on the Cancellation Agreement. (Bankr. Ct. Order, Dkt. 12-3, at 117).

Although an attorney's conflicted representation can constitute a breach of the attorney's fiduciary duty to the client, the Court agrees with the Bankruptcy Court that Greenberg's work on the Cancellation Agreement was not conflicted. According to the complaint, Greenberg drafted the Cancellation Agreement on May 29, 2014, and Halder and Westech executed the agreement the next day. (3d. Am. Compl., Dkt. 12-3, at 16–17). But Halder was still a Westech board member at the time Greenberg drafted and he signed the agreement—the Court of Chancery did not vacate the status quo order in the First 225 Action until June 24, 2014, and Halder did not formally resign until July 2, 2014. (*Id.* at 19). Although Milligan alleges that Greenberg "maintained conflicting loyalties"

---

[5] To be clear, Milligan alleges not only that Greenberg *advocated* for both Westech and Halder, but that it separately *represented* both Westech and Halder at the time that it drafted and facilitated execution of the Cancellation Agreement. (3d Am. Compl., Dkt. 12-3, at 18–19).

8

between Westech and Halder, (*id.*), and alleges in detail why the Cancellation Agreement was good for Halder and bad for Westech, (*id.* at 17–18, 28–32), Milligan does not plausibly allege that Greenberg was separately representing Westech and Halder while Halder remained on Westech's board. Stated differently, Milligan cannot plausibly allege a conflict of interest in the representation of two adverse clients[6] if Greenberg was acting on behalf of only one client, Westech, even if its representation of Westech was bad for the company.

Milligan's theory of conflict is that Greenberg "chose sides" during the First 225 Action "because it was in Greenberg's financial interest to do so." (Appellant Reply Br., Dkt. 16, at 1). Under this theory, Greenberg "aligned itself with Halder" because he and Salamone were paying Greenberg sizable fees through Westech. (*Id.* at 2). The trouble with this theory is that, according to Milligan's own pleadings, Halder and Salamone were Westech directors during the First 225 Action. (3d Am. Compl., Dkt. 12-3, at 14). Milligan does not explain, in his briefing or in his pleadings, how Greenberg was acting as counsel to Salamone and Halder in their individual capacities during the First 225 Action, rather than as counsel to Westech, when Greenberg executed instructions given by Westech directors. The only plausible inference from the pleadings is that Greenberg "aligned itself" with Halder and Salamone during the First 225 Action because the Court of Chancery ordered that they were directors of the company for whom Greenberg worked.

Milligan's other breach-of-fiduciary-duty allegation—regarding Greenberg's failure to push for enforcement of Halder's non-competition and -solicitation agreements after he left Westech, (3d Am. Compl., Dkt. 12-3, at 50)—fails to state a plausible claim for relief because it is an allegation for professional negligence rather than breach of fiduciary duty. Milligan alleges not that Greenberg

---

[6] The Texas Disciplinary Rules of Professional Conduct define a conflict of interest as representing a person in a matter in which that person's interests are materially and directly adverse to the interests of another client of the lawyer or the lawyer's firm. Tex. Disc. R. Prof. Cond. 1.06(b). "The Texas Disciplinary Rules of Professional Conduct and opinions from Texas courts and the State Bar of Texas interpreting those rules provide the disciplinary standards for Texas attorneys." *In re Meador*, 968 S.W.2d 346, 350 (Tex. 1998). And although the Texas Disciplinary Rules do not define the standards of civil liability, they are evidence of an attorney's duty of care. *Two Thirty Nine Joint Venture v. Joe*, 60 S.W.3d 896, 905 (Tex. App.—Dallas 2001), *rev'd on other grounds*, 145 S.W.3d 150 (Tex. 2004).

acted in its own pecuniary interest, *Archer v. Medical Protective Co. of Fort Wayne, Indiana*, 197 S.W.3d 422, 427–28 (Tex. App.—Amarillo 2006, pet. denied), but rather that it acted in "conscious disregard" for Westech's, (3d Am. Compl., Dkt. 12-3, at 50). This allegation explicitly concerns the quality of Greenberg's advice: "failing to pursue—or recommending to the Westech Board that it authorize pursuit [of]—Halder." (*Id.*). Such an allegation sounds in professional negligence rather than breach of fiduciary duty. *See Beck*, 284 S.W.3d at 437 ("[C]onflict-of-interest complaints sound in negligence when their real focus is the quality of the lawyer's legal services and not whether the lawyer pursued self-interest or improper benefit at the client's expense."). The Bankruptcy Court's holding that Milligan failed to state a claim against Greenberg for breach of fiduciary duty is affirmed.

### C. Professional Negligence

Although Milligan's conflict-of-interest allegations sound in negligence, the Court agrees with the Bankruptcy Court that Milligan fails to state a claim for negligence. "Attorneys owe their clients the duty to act with ordinary care—i.e., in a manner consistent with the standard of care that would be expected to be exercised by a reasonably prudent attorney." *Beck*, 284 S.W.3d at 426. "If an attorney makes a decision which a reasonably prudent attorney could make in the same or similar circumstance, it is not an act of negligence even if the result is undesirable." *Cosgrove v. Grimes*, 774 S.W.2d 662, 665 (Tex. 1989). "To prevail on a legal malpractice claim, a plaintiff must show 'that (1) the attorney owed the plaintiff a duty, (2) the attorney breached that duty, (3) the breach proximately caused the plaintiff's injuries, and (4) damages occurred.'" *Alexander v. Turtur & Associates, Inc.*, 146 S.W.3d 113, 117 (Tex. 2004) (quoting *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 496 (Tex. 1995)).

On appeal, Milligan argues that Greenberg breached its duty of care by "engaging in conflicted representation, failing to effectively advocate for Westech[,] and denying Westech the benefit of independent counsel." (Appellant Br., Dkt. 12, at 29). In his third amended complaint,

Milligan alleges that Greenberg breached its duty of care by (a) drafting and causing Westech to execute the Cancellation Agreement; (b) failing to advise the Westech board to sue Halder "for looting [Westech's] accounts and business, (c) petitioning for a custodian in July 2014 (the "Custodian Action"), (d) informing the Court of Chancery that Westech would not be renewing Halder's employment contract, (e) opposing a non-compete provision in a status quo order in the second control litigation (the "Second 225 Action"), and (f) seeking to compel payments from Westech to Salamone and Halder. (3d Am. Compl., Dkt. 12-3, at 56–57). The Bankruptcy Court considered whether each of these allegations states a plausible claim for negligence and concluded that none does. (Bankr. Ct. Order, Dkt. 12-3, at 115–119). The Court agrees with the Bankruptcy Court on all of Milligan's negligence allegations.

On appeal, Milligan paints Greenberg's conduct as negligent because it was conflicted. (*See* Appellant Br., Dkt. 12, at 27 ("Greenberg neglected its professional obligations by proceeding with the conflicted representation and, in numerous instances, advocating in a manner that was adverse to Westech's pecuniary interests."); Appellant Reply Br., Dkt. 16, at 14 n.27 ("Greenberg's conflicted representation of Westech was not limited to advice regarding the Cancellation Agreement. Greenberg sought bonus and commission payments from Westech and to obtain a custodian over Westech on behalf of Halder, Salamone and others.")).[7] The Court therefore will consider whether Greenberg's conduct was negligent due to a conflict of interest.

As the Court discussed above, there was no conflict of interest in Greenberg's work on the Cancellation Agreement, because Greenberg's only client at that time was Westech. The same is true of (1) Greenberg informing the Court of Chancery that Westech would not renew Halder's contract

---

[7] In a single sentence, Milligan does state that Greenberg's negligence was due to more than just conflicted representation: he asserts that Greenberg breached its duty of care to Westech by "failing to effectively advocate for Westech." (Appellant Br., Dkt. 12, at 29). But he supports that assertion with citations to two cases where the attorney was conflicted, and he otherwise only argues that Greenberg was negligent because it was conflicted. To the extent that Milligan's brief suggests that Greenberg's negligence was due to more than just conflicted representation, Milligan has waived that argument because he has not adequately briefed it. *See Audler v. CBC Innovis Inc.*, 519 F.3d 239, 255 (5th Cir. 2008) ("A party waives an issue if he fails to adequately brief it.") (citation and internal quotation marks omitted).

11

in May 2014, (3d Am. Compl., Dkt. 12-3, at 56); and (2) the payments that Greenberg "sought to compel" for Salamone and Halder, (*id.* at 57); because Salamone and Halder were Westech directors at the time, (*id.* at 14–17). Milligan therefore does not state a plausible claim for professional negligence based on these allegations, and the Bankruptcy Court's holding to that effect is affirmed.

But the other allegations concern actions taken by Greenberg after Halder was removed from the board, and Milligan alleges that Greenberg continued to represent Halder after his removal. (3d Am. Compl., Dkt. 12-3, at 19–23). Greenberg's actions during the period after Halder's removal—failing to advise the Westech board to sue Halder, representing Halder in the Custodian Action, and opposing a non-compete provision in a status quo order in the Second 225 Action—were conflicted under Texas law. More analysis is therefore required of these actions.

"[A]n attorney's duty of care includes the duty to avoid conflicts of interest that may impair the attorney's ability to exercise independent professional judgment on behalf of the client." *Two Thirty Nine Joint Venture v. Joe*, 60 S.W.3d 896, 905 (Tex. App.—Dallas 2001), *rev'd on other grounds*, 145 S.W.3d 150 (Tex. 2004) (citing RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 16(3)); *see also Beck*, 284 S.W.3d at 438 (concluding that the plaintiff's conflict-of-interest claim sounded in negligence); *Murphy*, 241 S.W.3d at 699 (same). Under the Texas Disciplinary Rules of Professional Conduct,[8] a lawyer who has formerly represented a client in a matter shall not later represent another person in a matter adverse to the former client in the same or a substantially similar matter. *In Interest of Kahn*, 533 S.W.3d 387, 392 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing Tex. Disciplinary R. Prof. 1.09(a)). There is no allegation that Westech consented to Greenberg's representation of Halder in the Custodian Action and the Second 225 Action, and Halder was by then an adverse party: he was both suing Westech and working for a competitor. (3d Am. Compl., Dkt. 12-3, at 20–21). Moreover, Greenberg's work for Halder after he left Westech

---

[8] See note 6.

12

pertained either to the composition of Westech's board or Halder's competition with Westech—matters substantially similar to Greenberg's work on Halder's employment agreement, the Cancellation Agreement, and the First 225 Action. From these allegations, it is plausible that Greenberg breached its duty of care to Westech.

But there is more to a negligence claim than duty and breach—Milligan must also plausibly allege that Greenberg's breaches of its duty of care caused injuries resulting in damages. *Alexander*, 146 S.W.3d at 117. Milligan does not allege that Westech was harmed by the Custodian Action, which was voluntarily dismissed one month later without the appointment of a custodian. (3d Am. Compl., Dkt. 12-3, at 23). Milligan likewise makes no argument in his briefing that the Custodian Action caused damages to Westech, even though the Bankruptcy Court found it implausible that Greenberg's efforts to obtain a custodian for the deadlocked board were harmful. (*See* Appellant Br., Dkt. 12, at 13 n.54 (arguing only that Greenberg was conflicted during the Custodian Action)). Milligan therefore does not state a plausible claim for professional negligence based on Greenberg's work on the Custodian Action, and the Bankruptcy Court's holding to that effect is affirmed.

That leaves only Milligan's allegations about Greenberg's failure to advise the Westech board to sue Halder for looting Westech's business and opposition to a non-compete provision in a status quo order in the Second 225 Action. (3d Am. Compl., Dkt. 12-3, at 56). The Bankruptcy Court found that these allegations do not state a claim for breach of duty because Greenberg was only taking positions consistent with the Cancellation Agreement, and Westech must have wanted its counsel to honor its contract. (Bankr. Ct. Order, Dkt. 12-3, at 118). The Court disagrees with dismissing Milligan's claim on this basis because it requires drawing too many inferences against Milligan at this stage. Nonetheless, the Court agrees that dismissal is proper on other grounds.

First, it is implausible that Greenberg's failure to seek a non-compete provision in the Second 225 Action's status quo order caused damages to Westech because the Second 225 Action

13

was voluntarily dismissed less than two weeks after the order was entered. (3d Am. Compl., Dkt. 12-3, at 22–23). Milligan nowhere alleges injuries that befell Westech from Halder's competition in that two-week period. With no plausible allegations of proximate causation or damages, Milligan's negligence claim based on this allegation must be dismissed.

As for Milligan's claim that it was negligent for Greenberg not to advise Westech to sue Halder for looting the business, his complaint fails to plausibly allege that the suit would have succeeded. Causation in a legal malpractice claim "ordinarily requires the plaintiff to prove that she would have prevailed in the underlying suit but for her attorney's alleged breach of duty." *Dove v. Graham*, 358 S.W.3d 681, 684 (Tex. App.—San Antonio 2011, pet. denied). This is commonly referred to as the "suit within a suit" requirement. *Id.* Even if Greenberg's failure to advise Westech to sue Halder was motivated by a conflict of interest, Milligan must still plausibly allege that Westech would have prevailed in such a suit. But Milligan's pleading on this point is threadbare: he neither identifies the claim Westech might assert against Halder for "looting the . . . business" nor specifies the facts underlying such a claim, much less allege why Westech's suit-within-a-suit would have succeeded. (3d Am. Compl., Dkt. 12-3, at 56). With no plausible allegations of proximate causation, Milligan's negligence claim based on this allegation must be dismissed.[9] The Bankruptcy Court's holding that Milligan fails to state a plausible professional negligence claim is affirmed.

### D. Aiding and Abetting Breach of Fiduciary Duty

Milligan alleges that Greenberg aided Salamone and Halder in breaching their own fiduciary duties to Westech by drafting and facilitating the Cancellation Agreement. (3d Am. Compl., Dkt. 12-

---

[9] The same result follows for Milligan's breach-of-fiduciary-duty claim against Greenberg, which is incorporated into his negligence claim by reference. (3d Am. Compl., Dkt. 12-3, at 57). Within the breach-of-fiduciary-duty claim is the allegation that Greenberg is liable for failing to "cause Westech to enforce Halder's non-compete and non-solicitation provisions." (*Id.* at 50). Of course, those provisions were nullified by the Cancellation Agreement. (*Id.* at 17). Milligan must again plausibly allege that Westech would have prevailed on this suit-within-a-suit, and he again fails to do so. Nothing in the complaint alleges why such a suit—to enforce contractual provisions that had been nullified by a subsequent contract—would have succeeded.

3, at 55). According to Milligan, Greenberg drafted the Cancellation Agreement knowing that (1) it gave Halder benefits that he was not entitled to under his employment contract, (2) Salamone lacked authority to execute it, and (3) the status quo order prohibited it. (*Id.*). The parties dispute whether Greenberg knew it was participating in the directors' breaches of their fiduciary duties, (Bankr. Ct. Order, Dkt. 12-3, at 121), and the Bankruptcy Court held that the complaint did not plausibly allege that Greenberg did, (*id.* at 122–125). This Court disagrees.

The Texas Supreme Court "has not expressly decided whether Texas recognizes a cause of action for aiding and abetting." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224 (Tex. 2017).[10] However, Texas appellate courts have repeatedly held that "a party who knowingly participates in another's breach of fiduciary duty may be liable for the breach as a joint tortfeasor." *Westergren v. Jennings*, 441 S.W.3d 670, 680 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *Kinzbach Tool Co. v. Corbett–Wallace Corp.*, 138 Tex. 565, 574 (Tex. 1942)); *see also Kastner v. Jenkens & Gilchrist, P.C.*, 231 S.W.3d 571, 580 (Tex. App.—Dallas 2007, no pet.) (same). "To establish a claim for knowing participation in a breach of fiduciary duty, a plaintiff must assert: (1) the existence of a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the third party was aware that it was participating in the breach of that fiduciary relationship." *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007) (citing *Wootten Cox Texas Newspapers, L.P. v. Wootten*, 59 S.W.3d 717, 722 (Tex. App.—Austin 2001, pet. denied)). It is the final requirement—Greenberg's knowledge that it was participating in a breach of fiduciary duty—that is before the Court now. (*See* Appellee Br., Dkt. 14, at 19–21 (disputing liability on the basis only of scienter)).

---

[10] The parties' briefs rely solely on Delaware law in discussing Milligan's aiding-and-abetting claim against Greenberg, even though the Bankruptcy Court based its decision on both Delaware and Texas law. The Court will resolve the parties' dispute according to Texas law. (Appellant Br., Dkt. 12, at 30–40; Appellee Br., Dkt. 14, 19–22; Appellant Reply Br., Dkt. 16, at 17–19).

15

According to Milligan, the Cancellation Agreement represented a "joint effort" by Salamone and Halder to allow Halder to compete with, and thereby destroy, Westech. (3d Am. Compl., Dkt. 12-3, at 28). To have known that it was participating in Halder and Salamone's breach of fiduciary duty, Greenberg would have to have known that their actions were fraudulent, taken in bad faith, or constituted self-dealing. (*See* Bankr. Ct. Hr'g Tr., Dkt. 12-3, at 171).[11] Milligan's theory of Greenberg's knowledge is as follows. Halder and Salamone's justifications for the Cancellation Agreement are untrue, and the agreement is not in Westech's interest in any way. (3d Am. Compl., Dkt. 12-3, at 28–32.) The agreement was executed in suspicious fashion, without proper board authority and in contravention of the status quo agreement. (*Id.* at 31, 55). Greenberg, aligned with Salamone and Halder during the board-control fight, drafted the agreement on its own initiative when it became clear that Westech would not renew Halder's contract. (*Id.* at 31, 54–55).

The Bankruptcy Court determined from these allegations that Greenberg did not plausibly know enough to participate in the directors' breaches of duty. (Bankr. Ct. Order, Dkt. 12-3, at 122–125). Even if the Bankruptcy Court is correct that Greenberg could not plausibly have known that Salamone lacked the authority to execute the Cancellation Agreement, (*id.* at 123), or that the agreement violated the status quo order, (*id.*), Milligan has still plausibly alleged Greenberg's knowledge that the agreement was a violation of Salamone and Halder's fiduciary duties. Taking Milligan's other allegations as true, a factfinder could infer that Greenberg knew the Cancellation Agreement was not in Westech's interest, and therefore that in drafting the agreement, Greenberg was helping Halder self-deal on his way out of the company. As the Bankruptcy Court found, Greenberg could plausibly have known that Westech was not in breach of its obligations to Halder under Halder's employment contract, and that therefore the company would have owed Halder

---

[11] In a related case against Halder and Salamone, the Bankruptcy Court found that Milligan had plausibly alleged that they breached their duty of loyalty to Westech by executing the Cancellation Agreement. (Bankr. Ct. Hr'g Tr., Dkt. 12-3, at 177–80).

16

substantially less money if it had simply not renewed his contract. (*See* Bankr. Ct. Order, Dkt. 12-3, at 124–25; 3d Am. Compl., Dkt. 12-3, at 30). Greenberg would then have known that Westech was receiving nothing in exchange for releasing Halder from his restrictive covenants. Considered in context—the control battle, Salamone and Halder's alignment on the board, Halder's imminent contract expiration—a factfinder could infer that Greenberg knew that the Cancellation Agreement was a sweetheart deal for Halder. That Greenberg allegedly drafted the agreement on its own accord suggests that it was conscious of the reasons behind the agreement's structure. Greenberg's motion to dismiss Milligan's aiding-and-abetting claim—perhaps better characterized as a knowing-participation claim under Texas law—is therefore denied. The Bankruptcy Court's order is vacated as it pertains to that claim.

## IV. CONCLUSION

For the reasons given above, **IT IS ORDERED** that the Bankruptcy Court's order granting Greenberg's motion to dismiss is **AFFIRMED IN PART AND VACATED IN PART**. The Bankruptcy Court's order is **VACATED** with respect to Milligan's knowing-participation claim, which should not be dismissed. The Bankruptcy Court's order is **AFFIRMED** in all other respects.

**SIGNED** on March 14, 2019.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE